UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ROBIN LEE BENJAMIN,<br><br>Petitioner,<br><br>v.<br><br>STATE OF NEVADA, *et al.*,<br><br>Respondents. | Case No. 3:16-cv-00024-MMD-VPC<br><br>ORDER |

**I.   INTRODUCTION**

This action is a *pro se* petition for a writ of habeas corpus by Robin Lee Benjamin, who, on March 11, 2011, after a jury trial, was convicted of the crime of exploitation of an older or vulnerable person. The action is before the Court with respect to the merits of the one remaining claim in Benjamin's habeas petition. The Court will deny the petition.

**II.   BACKGROUND**

In its order, on Benjamin's direct appeal, affirming Benjamin's conviction, the Nevada Supreme Court described the crime, as revealed by the evidence at trial, as follows:

> In 1993, Kelly Six befriended the victim while they were living in a mobile-home park. As time passed, the victim inherited a large sum of money and purchased a home. In 2008, the victim was hospitalized for dementia and Six obtained a power-of-attorney over her affairs. After officials inspected the victim's residence and deemed it uninhabitable, Six decided to sell the residence. She sought out . . . Robin Lee Benjamin – a real estate broker – to sell the distressed property. Six and Benjamin met and discussed the methods and advantages of moving assets out of the victim's name. Benjamin agreed to buy the property, took title, and issued

| | |
|---|---|
| 1 | notes payable to the victim. Benjamin then transferred the home to a non-profit business which she owned – creating the appearance of an unencumbered title. Benjamin also incorporated Wildlife Images for Six. Several weeks later, Six wrote a $170,000 check to Benjamin from the victim's account. Benjamin endorsed the check and deposited it into Six's Wildlife Images account. |

(Order of Affirmance, Exhibit 89 at 1 (ECF No. 12-13 at 2).)

On March 24, 2010, Benjamin was charged in an indictment, in Nevada's Second Judicial District Court, with the crime of exploitation of an older or vulnerable person. (*See* Indictment, Exhibit 4 (ECF No. 9-4).) Benjamin was arraigned on April 29, 2010, and she pled not guilty. (*See* Reporter's Transcript, April 29, 2010, Exhibit 14 (ECF No. 9-14).) Benjamin was tried before a jury in December of 2010. (*See* Trial Transcripts, Exhibits 31, 32, 33, 34, 36, 38, 40, 43, 46, 55 (ECF Nos. 10-5, 10-6, 10-7, 10-8, 10-10, 10-12, 10-14, 10-17, 10-20, 11-4).) The jury rendered its verdict on December 16, 2010, finding Benjamin guilty. (*See* Verdict, Exhibit 57 (ECF No. 11-6).) Benjamin was sentenced on March 10, 2011. (*See* Transcript of Sentencing, Exhibit 63 (ECF No. 11-12).) She was sentenced to ten years in prison, with parole eligibility after two years. (*See id.* at 37 (ECF No. 11-12 at 38); Judgment of Conviction, Exhibit 64 (ECF No. 11-13).) Her sentence also includes payment of $675.00 in fees, and $181,864.00 in restitution, the restitution to be paid jointly and severally by Benjamin and her co-defendant. (*See* Judgment of Conviction, Exhibit 64 (ECF No. 11-13).)

Benjamin appealed. (*See* Notice of Appeal, Exhibit 69 (ECF No. 11-18); Fast Track Statement, Exhibit 81 (ECF No. 12-5).) The Nevada Supreme Court affirmed the judgment of conviction on February 9, 2012. (*See* Order of Affirmance, Exhibit 89 (ECF No. 12-13).) The Nevada Supreme Court denied rehearing on July 31, 2012. (*See* Order Denying Rehearing, Exhibit 96 (ECF No. 12-20).)

On May 20, 2013, Benjamin filed, in the state district court, a motion for modification of her sentence. (*See* Motion for Modification of Sentence, Exhibit 104 (ECF No. 13-3).) The state district court denied that motion on July 9, 2013. (*See* Order Denying Motion for Modification of Sentence, Exhibit 109 (ECF No. 13-8).)

///

2

| | |
|---|---|
| 1 | On August 16, 2013, Benjamin filed, in the state district court, a petition for writ of |
| 2 | habeas corpus. (*See* Petition for Writ of Habeas Corpus, Exhibit 110 (ECF No. 13-9).) |
| 3 | The state district court appointed counsel to represent Benjamin in that action. (*See* Order |
| 4 | Granting Motion, Exhibit 116 (ECF No. 13-15); Recommendation and Order for |
| 5 | Appointment of Counsel, Exhibit 117 (ECF No. 13-16).) With counsel, Benjamin elected |
| 6 | not to supplement her petition. (*See* Notice to Court of No Supplement, Exhibit 119 (ECF |
| 7 | No. 13-18).) The state district court held an evidentiary hearing on May 27, 2015. (*See* |
| 8 | Transcript of Proceedings, May 27, 2015, Exhibit 133 (ECF No. 14-7).) On June 4, 2015, |
| 9 | the state district court entered a written order, denying Benjamin's state habeas petition. |
| 10 | (*See* Findings of Fact, Conclusions of Law and Judgment Denying Petition, Exhibit 135 |
| 11 | (ECF No. 14-9).) Benjamin appealed. (*See* Notice of Appeal, Exhibit 136 (ECF No. 14- |
| 12 | 10); Fast Track Statement, Exhibit 141 (ECF No. 14-15).) The Nevada Court of Appeals |
| 13 | affirmed on November 19, 2015. (*See* Order of Affirmance, Exhibit 144 (ECF No. 14-18).) |

This Court received Benjamin's federal habeas petition, initiating this action, on January 21, 2016. (ECF No. 1.) Benjamin's petition asserted fourteen grounds for relief.

Respondents filed a motion to dismiss on March 16, 2016. (ECF No. 8.) Benjamin opposed that motion. (ECF No. 19.)

In response to the motion to dismiss, Benjamin also filed an amended petition for writ of habeas corpus. (ECF No. 17.) The amended petition was identical to Benjamin's original petition, with respect to the grounds for relief asserted; it only cured defects regarding the named respondents. Respondents moved to strike the amended petition. (ECF No. 18.)

On October 3, 2016, the Court denied Respondents' motion to strike Benjamin's amended petition, and granted in part, and denied in part, the motion to dismiss. (ECF No. 21.) The Court dismissed the claims in Grounds 1-8 and 11, to the extent they were based on alleged violations of Benjamin's rights under the Nevada Constitution. The Court found Benjamin's remaining claims in Grounds 1 and 3-14 to be unexhausted. With respect to those unexhausted claims, the Court required Benjamin to make an election:

1 to either abandon those claims and proceed with this action with regard to her remaining claim, in Ground 2, or file a motion for a stay, requesting that this case be stayed while she exhausts her unexhausted claims in state court.

On December 19, 2016, Benjamin filed a notice (ECF No. 23) stating her election to abandon her unexhausted claims and proceed with her exhausted claim. On December 21, 2016, the Court accepted Benjamin's abandonment of her unexhausted claims, and dismissed those claims. (ECF No. 24.)

Respondents filed their answer, responding to Ground 2 of Benjamin's amended petition, on March 21, 2017. (ECF No. 25.) Benjamin filed a reply on May 24, 2017. (ECF No. 26.)

## III. DISCUSSION

### A. Standard of Review

28 U.S.C. § 2254(d) sets forth the standard of review applicable in this case under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

4

1    A state court decision is an unreasonable application of clearly established
2 Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court
3 identifies the correct governing legal principle from [the Supreme Court's] decisions but
4 unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S.
5 at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires
6 the state court decision to be more than incorrect or erroneous; the state court's
7 application of clearly established law must be objectively unreasonable. *Id.* (quoting
8 *Williams*, 529 U.S. at 409).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted) (describing standard as "a difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt").

**B.    Ground 2**

In Ground 2 of her amended habeas petition, Benjamin claims that her constitutional rights were violated as a result of ineffective assistance of her trial counsel, because her trial counsel failed to ensure that she could adequately hear the trial proceedings. (Amended Petition for Writ of Habeas Corpus at 6-8 (ECF No. 17 at 6-8).

Benjamin asserted this claim in her state habeas action. (*See* Petition for Writ of Habeas Corpus (Post Conviction), Exhibit 110 at 5-8 (ECF No. 13-9 at 6-9).) The state district court held an evidentiary hearing, at which this claim was the primary focus. (*See* Transcript of Proceedings, May 27, 2015, Exhibit 133 (ECF No. 14-7).) The state district court denied Benjamin's petition (*see* Findings of Fact, Conclusions of Law and Judgment

Denying Petition, Exhibit 135 (ECF No. 14-9)). The state district court's order included the following findings:

> Turning to the primary claim, the court was aware during the trial that petitioner had impaired hearing. Thus, she was provided with amplification devices during the trial. The post-conviction hearing included an audiologist who testified that long after the trial had ended the petitioner's hearing aids were examined. The doctor testified that one tube was occluded and the other was split and so both would not have been effective. There are two problems with that testimony. First, the examination was long after the trial and second, the petitioner did not have to rely on her hearing aids as the court provided amplification devices that entailed headphones.
>
> The court also finds that petitioner has not met her burden of proving that she actually had problems hearing the testimony. Although she testified to some vague problems, Carl Hylin [Benjamin's trial counsel] testified to the contrary that she was a very active participant in the trial and that their discussions of the testimony revealed that she had indeed heard the proceedings. The court finds that testimony was credible.
>
> One who would assert a claim of ineffective assistance of counsel bears the burden of proving, by a preponderance of the evidence, that the specific decisions or omissions of counsel fell below an objective standard of reasonableness and that but for the failings of counsel a different result was reasonably probable. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984); *Means v. State*, 120 Nev. 1001, 103 P.3d 25 (2004). There is a presumption that counsel fully discharged his or [her] duties. *Means v. State*, *supra*. The court finds that petitioner has failed to prove that counsel had a duty to ask the court to suspend the proceedings and find a different accommodation. The court also finds that petitioner did indeed participate in the trial in a meaningful way.
>
> * * *
>
> This court, and counsel, made reasonable accommodations and the defendant was able to participate in the trial in a meaningful way. In fact, the evidence does not persuade this court that Benjamin missed a single word of the testimony. Benjamin's claim to the contrary was both vague and incredible. Accordingly, the court finds that petitioner has failed to show that her hearing impairment or the claim of ineffective assistance [of] counsel should lead to relief from her conviction.

(Findings of Fact, Conclusions of Law and Judgment Denying Petition, Exhibit 135 at 2-3 (ECF No. 14-9 at 3-4).) Benjamin appealed from the denial of her state habeas petition, and raised this claim of ineffective assistance of trial counsel on appeal. (*See* Fast Track Statement, Exhibit 141 at 7-11 (ECF No. 14-15 at 8-12).) The Nevada Court of Appeals affirmed, ruling as follows:

///

> Appellant Robin Benjamin claims the district court erred by denying her ineffective-assistance-of-counsel claim. Specifically, she claimed trial counsel were ineffective for failing to ensure that she could hear during the trial. To prove ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice such that there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). Both components of the inquiry must be shown, *Strickland*, 466 U.S. at 697, and the petitioner must demonstrate the underlying facts by a preponderance of the evidence, *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004). We give deference to the district court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 166 (2005).
>
> Benjamin fails to demonstrate trial counsel were deficient or resulting prejudice. The district court held an evidentiary hearing on this issue. Benjamin testified she could not hear well even with the amplification device provided to her by the district court. Trial counsel testified Benjamin was a very active participant in her defense, discussed the evidence presented during trial, and appeared to understand the proceedings. The district court found trial counsel to be credible, and we conclude substantial evidence supports the decision of the district court.
>
> Further, we conclude Benjamin fails to demonstrate prejudice because she fails to demonstrate a reasonable probability of a different outcome at trial had trial counsel done more to ensure she could hear the proceedings. Benjamin fails to allege specific facts that, if true, would entitle her to relief regarding how the outcome of the trial would have been different had she been able to hear better. *See Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984). Therefore, the district court did not err in denying this claim . . . .

(Order of Affirmance, Exhibit 144 at 1-2 (ECF No. 14-18 at 2-3).)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two prong test for claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's burden is to

7

show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

Where a state court has adjudicated a claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable under the AEDPA is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the Supreme Court instructed:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 123, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 994-95 (9th Cir. 2010) (acknowledging double deference required for state court adjudications of *Strickland* claims).

The Nevada courts' resolution of this claim was reasonable. The evidence at the evidentiary hearing in state court indicated that Benjamin did have hearing loss, and wore hearing aids, and that her hearing aids may not have been working properly at her trial. (*See* Transcript of Proceedings, May 27, 2015, Exhibit 133 at 4-42 (ECF No. 14-7 at 5-43).) However, in her testimony at the evidentiary hearing, while she contended, generally, that her hearing impairment rendered her unable to participate fully in her trial, Benjamin did not articulate any specific manner in which her hearing impairment undermined her defense; that is, she did not specify any particular manner in which her hearing impairment may have affected the outcome of the trial. (*See id.* at 25-41 (ECF No. 14-7 at 26-42).) And, Benjamin's trial counsel testified as follows at the evidentiary hearing:

8

| | | |
|---|---|---|
| 1 | Q. | Did your client, Ms. Benjamin – did she participate in the trial? |
| 2 | A. | Yes, she was very active. |
| 3 | Q. | Did you have conversations? |
| 4 | A. | Often. |
| 5 | Q. | Were they cogent? |
| 6 | A. | Yes. |
| 7 | Q. | Did she appear to understand what was happening? |
| 8 | A. | Appeared to me she did. |
| 9 | Q. | Okay. Were her comments and were her questions relevant? |
| 10 | A. | Well, quite relevant. She would even write out questions. |
| 11 | Q. | Did she tell [you from] time to time she was having trouble hearing? |
| 12-13 | A. | There were conversations that she would occasionally have trouble hearing. But, you know, I don't remember any specific times or things that she said that had to be repeated in court.<br><br>But I do remember the issue came up several times. |
| 14-15 | Q. | Okay. You are aware that a criminal defendant has a right to be able to assist in her own defense? |
| 16 | A. | Absolutely. |
| 17 | Q. | Was Robin Benjamin able to do that? |
| 18 | A. | Yes, she was. She was very active. |
| 19 | Q. | And understand the nature of the charges? |
| 20 | A. | Clearly understood the nature of the charges. |
| 21 | Q. | Did she appear to understand the evidence against her? |
| 22-23 | A. | She understood all of the evidence. As a matter of fact, she was instrumental in developing the theory of the case with me. |
| 24 | Q. | What was that theory of the case? |
| 25-26 | A. | Well, the theory of the case was that she, essentially, was only trying to help [the victim] because [the victim], in her infirmity, had rendered her own . . . home uninhabitable.<br><br>And Robin Benjamin was attempting to assist her in rehabilitating the home so she could sell it. |

| | | |
|---|---|---|
| 1 | Q. | Okay. If you had seen signs that your client was not able to meaningfully participate because of her hearing problems, what would you have done about it? |
| 2 | | |
| 3 | A. | Well, I would have asked the judge to suspend the proceedings until we could get, you know, the defect fixed. |
| 4 | | But I – you know, although the issue came up, it was not a permanent or even an overriding issue in our relationship. I sat next to her for the entire trial, which I think was nearly two weeks long, and I communicated with her effectively both in an outside of court. |
| 5 | | |
| 6 | | |
| 7 | | She would go to lunch with myself and Mr. Sullivan, and, you know, I had ordinary conversations. |
| 8 | Q. | She was able to discuss the evidence that had been presented earlier that day? |
| 9 | | |
| 10 | A. | Absolutely. |
| 11 | Q. | As though she had heard it? |
| 12 | A. | Yes. |

(*Id.* at 43-45 (ECF No. 14-7 at 44-46); *see also id.* at 45-50 (similar testimony on cross and re-direct examination).)

In light of the evidence at the evidentiary hearing, the Nevada Court of Appeals reasonably affirmed the denial of Benjamin's claim that her trial counsel was ineffective for failing to ensure that she could adequately hear the trial proceedings. There is no showing by Benjamin that her trial counsel acted unreasonably with respect to her hearing impairment, and there is no showing that, had her trial counsel done anything different in that regard, there would have been a reasonable probability of a different outcome at trial. The Nevada Court of Appeal's ruling was not contrary to, or an unreasonable application of, *Strickland* or any other United States Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence.

Accordingly, the Court will deny Benjamin's petition for a writ of habeas corpus.

**IV.    CERTIFICATE OF APPEALABILITY**

The standard for issuance of a certificate of appealability is governed by 28 U.S.C. § 2253(c). The Supreme Court has interpreted section 2253(c) as follows:

///

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000). Applying this standard, the Court finds that a certificate of appealability is unwarranted.

**V.  CONCLUSION**

It is therefore ordered that the Amended Petition for Writ of Habeas Corpus (ECF No. 17) is denied.

It is further ordered that Petitioner is denied a certificate of appealability.

It is further ordered that the Clerk of the Court is to enter judgment accordingly.

DATED THIS 18th day of June 2018.

MIRANDA M. DU,
UNITED STATES DISTRICT JUDGE